## TEXAS CO. v. WALL et al.
### No. 6943.

Circuit Court of Appeals, Seventh Circuit.
Oct. 26, 1939.

June C. Smith, Hugh V. Murray, Jr., and William C. Stephens, all of Centralia, Ill., for appellants.

Henry I. Green, of Urbana, Ill., Enos L. Phillips and Oris Barth, both of Urbana, Ill., and Walter E. Will, of Mattoon, Ill. (J. H. Hill, of Tulsa, Okl., and Green & Palmer, of Urbana, Ill., of counsel), for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

This is an appeal from a decree of injunction entered by the District Court for the Eastern District of Illinois. The decree enjoined and restrained defendants-appellants, Clark, Wall and Bresnahan, from entering upon any part of a certain twenty-acre tract of land for the purpose of mining or operating for oil or gas or laying pipe lines or building tanks or other structures thereon to produce oil or gas so long as the oil and gas lease of the plaintiff, Texas Company, remained in force.

Plaintiff is the holder and owner of an oil and gas lease made by Clyde Lee and wife dated March 29, 1937, and duly recorded. The real estate is described in the lease as follows: "The N. ½ of the S. W. ¼ of the S. E. ¼, except about twenty-five hundredths of one acre on the west side deeded to the Centralia Water Works Co. of Section 33, Township 2 N., Range 2 E. and containing 19 75/100 acres, more or less." Defendant Clark is the named lessee, and Wall and Bresnahan the named lessors, in an oil and gas lease in which the leased property is described as a strip of land 16½ feet in width off the west end of the parcel of land described in the lease of Lee and wife to plaintiff. Defendants Wall and Bresnahan claim title to said 16½ foot strip located on the west side of the twenty-acre tract under a quit claim deed dated December 8, 1938, which was executed and delivered by William A. Sands and wife. The deed describes the conveyed premises as follows: "Sixteen and one-half (16½) feet off the West side of the North Half of the Southwest Quarter (SW¼) of the Southeast Quarter (SE¼) of Section Thirty-three (33), Township Two (2) North, Range Two (2) East of the Third Principal Meridian, and containing one-fourth (¼) acres, more or less * * *"

Defendant Clark entered upon the 16½ foot strip, erected an oil derrick thereon and began drilling for oil or gas. Plaintiff claims that the acts of Clark constitute a continuing trespass on the rights of plaintiff under the lease of which he is the holder and owner.

Common source of title under which each party claims is William A. Sands, who purchased the twenty-acre tract involved in this suit at a sale in partition. Sands acquired title under a Master's deed dated June 21, 1911, and filed for record on the same date, which was the date on which the court approved the sale which had been made May 20, 1911. In anticipation of becoming the owner of the tract Sands agreed with the representatives of the City of Centralia, Illinois, and the Centralia Water Company that he would convey to the Water Company that portion of the tract which the company would require in connection with the construction and maintenance of its reservoir. Also prior to the acquiring of title to the tract he agreed to convey it to one Oscar Farthing, less what he should be required

to convey to the Water Company in pursuance of his agreement.

At the time of the foregoing negotiations and subsequent conveyances the Water Company was constructing a dam below the land in question for the purpose of creating a water reservoir and was engaged in establishing the boundaries of the land which would be needed to create and maintain the reservoir. Under date of May 27, 1911, Sands executed a warranty deed to Oscar Farthing which was delivered and filed for record June 21, 1911, and which purported to convey the following premises: "The N ½ of the S. W. ¼ of the S. E. ¼ of Section 33, Township 2 North Range 2 East of the 3rd P. M., except about (25/100) acres on the Westerly side to be deeded to the Centralia Water Works Co., situated in the Township of Salem, Marion County, Illinois." Under the same date, May 27, 1911, Farthing and wife executed a mortgage which was filed for record June 21, 1911, the premises being described in the mortgage the same as in the deed to Farthing.

Under date of June 6, 1911, Sands and wife executed their warranty deed to the Water Company in compliance with Sands' promise to which reference has been made. The deed was filed for record July 15, 1911, and contains the following description of the property conveyed therein: "All that part * * * that is now or shall hereafter be, covered by water in the reservoir of the said Centralia Water Supply Co. to high water mark in flood time of said reservoir, as said reservoir is located, surveyed, and staked out, over and upon said tracts of land above described * * *"

In addition to the foregoing facts, which are included in the finding of facts, the District Court also found the following:

"The deed from the Master in Chancery to Sands, the deed from Sands to Farthing, the mortgage from Farthing to McDonal, the deed from Sands to Elliott, and the mortgage from Elliott to McDonal, were all filed for record on the same day, June 21, 1911. The deed from Sands to Centralia Water Supply Company was filed for record July 15, 1911."

"The transactions by which the water company acquired its title to the lands proposed to be overflowed and covered with the reservoir at high water mark in flood time, and the acquisition of title by Sands, and his sale of both the north and the south half of the Southwest Quarter of the Southeast Quarter of said Section 33, was a series of contemporaneous or related transactions all executed and carried out as a part of the general understanding and agreement between the parties to the deeds, including the water company."

"A map prepared by the City Engineer of Centralia was introduced in evidence on the trial of this cause, and marked thereon are three boundary lines pertaining to the reservoir created by the Centralia Water Supply Company by the construction of the dam above mentioned. The dam was provided with a spillway from which projections were made of an area which would be covered by water at the height of the spillway in the dam. The high water mark on the twenty-acre tract described as the North Half of the Southwest Quarter of the Southeast Quarter of Section 33, fixed by the level with the top of the spillway, barely extended onto the southern edge of said twenty-acre tract. The high water mark in flood time of said reservoir, as said reservoir was then located, surveyed and staked out over and upon the North Half of the Southwest Quarter of the Southeast Quarter of said Section 33, included an area at or near the southwest corner of said twenty-acre tract of approximately 20/100 of an acre; * * *"

Obviously the decision in this case on the merits depends upon whether Sands retained ownership of the 16½ foot strip by force of the exception in his deed to Farthing. Defendants urge that the language "about 25/100 of an acre on the westerly side" of a tract of land necessarily means a uniform strip off the west end of the tract containing 25/100 acres of land; and since a strip 16½ feet in width off the west end of the tract would equal 25/100 acres of land they contend that the deed must be construed, as a matter of law, to except from the conveyance by Sands and wife to Farthing such 16½ foot strip. The District Court concluded that the language "about 25/100 acres on the westerly side" is not sufficiently certain and definite to require the construction contended for by defendants, and that the uncertainty of meaning required a resort to parol evidence to ascertain the quantum and location of the land excepted. It is clear, as the District Court

48

concluded, that the phrase "to be deeded to the Centralia Water Company" enters into the description of the property excepted and the words necessarily import an understanding between the grantor and grantee that the grantor was under some obligation to convey "about 25/100 acres" to the water company and that the required amount was being excepted. As stated in the memorandum opinion of Lindley, J., "the exception was certain as to an intent to except a specific thing but the exact boundaries and location of that particular thing were to remain uncertain until they could be made certain by the conveyance to the water company." If data existed which determined the location and fixed the boundaries of the parcel "to be deeded to the Centralia Water Works Company" in accordance with the understanding and intention of Sands and Farthing and not inconsistent with the requirement of the deed that there be "about 25/100 acres on the westerly side," then the District Court properly heard evidence tending to disclose the data.

■ The general rule is that an exception in a deed of conveyance must contain an identifying description of the land excepted, yet such requirement is satisfied if the language of the exception provides information which, when supplemented by competent extrinsic evidence, satisfactorily identifies the excepted parcel. Physical conditions or objects existing at the time of a grant are most frequently referred to for the purpose of identifying land which is excepted from a grant, but references to acts or agreements of parties relating to the excepted part, or to identifying occurrences, are recognized in the decisions as sufficient if they serve as means of determining the location and boundaries of the parcel which is the subject of the exception. The language of exception in the instant case unequivocally states that the parcel of land excepted comprises about 25/100 acres, that it is located "on the westerly side" of the twenty-acre tract, and that it is a parcel of land which is "to be deeded to the Centralia Water Works Company." The words "to be deeded to the Centralia Water Works Company" are descriptive of the excepted parcel and constitute the means of determining the excepted part as truly as such ex-

pressions as "such portions as were theretofore taken by the railroad as a right of way;" [1] or "some small tracts quitclaimed in settlement in exchange of lands;" [2] or "excepting five lots in first block and second lot in second block, south of the railroad and plank road, as the same shall be hereafter subdivided into village lots by said Day, or his assigns, said lots having been heretofore sold by said Cassady." [3]

To give effect to the foregoing exceptions it was necessary to resort to extrinsic evidence to determine what land had been "taken by the railroad as a right of way" or what land was embraced in "some small tracts quitclaimed in settlement in exchange of lands" by the grantor, or to determine how the tract of land was "subdivided into village lots by said Day, or his assigns." In the instant case it was necessary to resort to extrinsic evidence in order to locate and describe the land which the parties understood would be "deeded to the Centralia Water Works Company."

■ Assuming competency, it is not material whether the extrinsic evidence consists of official record, written contracts, or parol evidence of agreements. If the exception in the instant case had been of land which Sands had deeded to the Centralia Water Works Co. the best evidence would have been the deed or certified copy of the deed as recorded in the deed records of Marion County, Illinois. But in the instant case the extrinsic evidence must disclose non-record facts from which the land excepted can be identified. If no facts could be shown to exist which defined with sufficient certainty the boundaries of the excepted parcel, the exception would fail. But extrinsic evidence disclosed that Sands had promised to convey to the Water Works Company that portion of the twenty-acre tract which it would require in connection with the construction and maintenance of its reservoir; also that the water company was constructing a dam below the land in question for the purpose of creating the reservoir and was engaged in surveying and establishing the boundaries of the land which would be needed to create and maintain the reservoir; and the extrinsic evidence also disclosed that the determination of the boundaries of the land which would be needed by the Centralia

[1] Rio Grande Western R. Co. v. Salt Lake Inv. Co., 35 Utah 528, 101 P. 586.

[2] Mills v. Edgell, 69 W.Va. 421, 71 S. E. 574, 575.

[3] Rockafeller v. Arlington, 91 Ill. 375.

Water Works Co. in connection with the maintenance of the reservoir involved an engineering computation based upon known data. The extrinsic evidence also established that Sands, grantor, and Farthing, the grantee, understood the foregoing facts and understood that the language of the exception was used for the purpose of giving effect to such understanding.

We conclude that the exception was valid and that Farthing was vested with title to the twenty-acre tract less the area which should at any time be covered with water in the reservoir of the Centralia Water Company "to high water mark in flood time of said reservoir as said reservoir" was "located, surveyed and staked out" at the time of the conveyance by Sands to Farthing and by Sands to the Centralia Water Company, the excepted area being more particularly described in the deed of conveyance to the Centralia Water Company. By the two conveyances Sands parted with title to all his interest in the twenty-acre tract.

Our discussion has anticipated the further contention of defendants that the deed from Sands to the Centralia Water Company describing the land conveyed as bounded by the high water mark in the reservoir at flood stage is too indefinite and uncertain to constitute a conveyance. This contention is based upon the fact that the only line that could be established, located or known when the deed was made was the level of the top of the spillway and, consequently, the reference in the deed to the "high water mark in flood time" was wholly meaningless. But the testimony of the city engineer establishes that the high water mark in flood time would be one foot above the water line when the water in the reservoir stood at the spillway level. He estimated the area which would be covered by water in flood time of the reservoir, with the top of the spillway at the height established in 1911, would be about 20/100 of an acre. We are of the opinion that in view of the foregoing the description of the land in the deed of Sands to the Centralia Water Company satisfied the requirements of certainty of description for a valid conveyance.

The District Court stated as a conclusion of law that between the date of the deed to Farthing and that of the deed to the water company Sands and Farthing were co-tenants of undivided portions of the land and that upon the execution of the deed by Sands to the water company the undivided portions were ascertained, identified and divided as the parties contemplated at the time the land was conveyed to Farthing. But the defendants urge that even though Farthing and Sands became tenants in common of the entire twenty acres, still the deed by Sands to the Centralia Water Supply Company could not change or alter the ownership of Sands and Farthing in the land as tenants in common without the consent of Farthing, the other joint owner, or his grantees. The evidence, however, clearly supports the finding of the trial court that the acquisition of title by Sands, the transactions by which the water company acquired its title to the land proposed to be overflowed and covered with the reservoir at high water mark in flood time, and Sands' conveyance to Farthing, constituted a series of contemporaneous or related transactions all executed and carried out as a part of the general understanding and agreement between the parties to the deeds, including the water company. Sands, Farthing and the Water Company understood that the land excepted in the deed to Farthing would be conveyed to the Water Company.

Farthing recognized in his purchase money mortgage and later in his deed of conveyance to Lee, the present owner, that the excepted portion of the twenty-acre tract was to be deeded to the Water Company. When Sands conveyed the excepted land he was carrying out the understanding of the interested parties,—Sands, Farthing and the Centralia Water Supply Company.

Defendants question the District Court's jurisdiction. This point was not urged to the trial court. The contention is made that the lessor of the plaintiff. is an indispensable party and should have been made a party plaintiff, with the result of ousting the jurisdiction of the District Court. In support of the foregoing contention the defendants rely heavily upon South Penn Oil Co. v. Miller [4] and McConnell v. Dennis. [5]

We are not prepared to say that the language and the assumptions of the two foregoing cases do not furnish some support for the contention that the lessor of the plaintiff is an indispensable party. The McConnell decision clearly is authority for

[4] 4 Cir., 175 F. 729.

[5] 8 Cir., 153 F. 547.

holding that the lessors of the defendants in the instant case are indispensable parties; but the plaintiff joined them as defendants. The South Penn Oil Co. case can be distinguished by the fact that in that case the controversy involved the ownership of about 20,000 barrels of oil in which the lessor had a present interest. The opinion in the McConnell case does not reveal the scope of the pleadings, but the effect of the decree obviously is to prevent the defendant-lessee from complying with his obligations to his lessor. If the relief granted in a decree of injunction against the lessee is of such a character that the defendant is legally bound to refrain from acts to which his lessor, by the terms of the lease, is entitled, it is difficult to escape the conclusion that the decree leaves the controversy in such a condition that the interest of the defendant's lessor is seriously affected. But when a plaintiff-lessee is seeking merely to enjoin a defendant-lessee from interfering with the plaintiff's leasehold interest, and no relief is sought either for or against the plaintiff's lessor, the decree of the trial court ordinarily can be so framed as not to affect the rights of the plaintiff's lessor.

In the instant case the plaintiff's complaint does not ask for any relief for or against his lessor and the decree of the District Court is carefully limited in its legal effect to the parties before the court. The defendants are enjoined only from such acts as affect the leasehold interest of the plaintiff; and the injunction is limited in duration to the period of time that the oil and gas lease of the plaintiff-lessee remains in force. No legal restraint is put upon the performance by plaintiff-lessee of his lease obligations to his lessor; and the lessor is legally free to protect his interests as against both his lessee and the defendants, lessee and lessors. And the foregoing would be true even if the District Court had found against the plaintiff-lessee and denied his prayer for injunction.

■■ One is not an indispensable party to a suit merely because he has a substantial interest in the subject matter of the litigation, nor is one an indispensable party even though one's interest in the subject matter of the litigation is such that his presence as a party to the suit is required for a complete adjudication in that suit of all questions related to the litigation. The test as suggested in Waterman v. Canal-Louisiana Bank & Trust Co. [6] may be stated thus: Is the absent person's interest in the subject matter of the litigation such that no decree can be entered in the case which will do justice between the parties actually before the court without injuriously affecting the rights of such absent person?

On the pleadings and facts of this case the District Court properly could enter, and did enter, a decree which did justice between the parties actually before the court without injuriously affecting the rights of the absent plaintiff-lessor.

■ In our opinion the plaintiff's lessor was not an indispensable party and we so hold.

Judgment affirmed.

---

[6] 215 U.S. 33, 49, 30 S.Ct. 10, 14, 54 L.Ed. 80. "If the court can do justice to the parties before it without injuring absent persons, it will do so, and shape its relief in such a manner as to preserve the rights of the persons not before the court. If necessary, the court may require that the bill be dismissed as to such absent parties, and may generally shape its decrees so as to do justice to those made parties, without prejudice to such absent persons." (Citing Payne v. Hook, 7 Wall 425, 19 L.Ed. 260.)