**JORDAN et al. v. MARKS et al.**
**Civil Action No. 917.**

District Court, W. D. Louisiana, Monroe Division.

May 12, 1944.

G. P. Bullis, of Ferriday, for plaintiffs.

Sholars & Gunby, of Monroe, and Young & Watson, of St. Joseph, for defendant Henry M. Marks.

John M. Madison, of Wilkinson, Lewis & Wilkinson, of Shreveport, for Tidewater Associated Oil Co. and Seaboard Oil Co. of Delaware.

Arthur O'Quin, of Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for Carter Oil Co.

PORTERIE, District Judge.

Plaintiffs' prayer is for a judgment recognizing them "as sole owners and possessors of the land described in paragraph 2 hereinabove, free from all claims of defendants of every nature; * * * pray for such additional and equitable relief as to the Court may seem proper in the premises."

A particularized description of the property is not necessary; it is sufficient to say that it is the whole ownership of a certain tract and the undivided half interest in another tract, containing in the whole 220 acres that is involved, both tracts "being the Pinhook Plantation."

The plaintiffs are citizens of the state of Louisiana, except two who are citizens of the state of Illinois; one defendant is a resident of the state of Mississippi (allegedly sole holder of fraudulent title to all property involved); another of the state of West Virginia; and the two others, of the state of Delaware (the latter three being corporations, holders of mineral rights to the property).

The jurisdiction of this court is based upon diversity of citizenship and the matter in controversy being of a greater value than $3000.

A motion to dismiss by defendant Marks, the citizen from Mississippi, was promptly filed, predicated upon "1) Plea to Personal Jurisdiction, to Insufficiency of Process and Service of Process" (subsequently orally waived); "2) Plea to Jurisdiction over Subject Matter"; "3) Failure to State a Claim upon which Relief can be Granted."

The two Delaware corporations also filed a motion to dismiss because of (1) want of jurisdiction, and (2) failure to state a claim upon which relief could be granted. The West Virginia corporation filed a motion to the effect that before it could intelligently answer the complaint because of its vagueness and indefiniteness, the plaintiffs should be ordered to make their complaint more specific and definite in a number of respects.

At the hearing on these motions, there were important stipulations made, to-wit:

(a) "Plaintiffs admit that all sales were made as stated in the motion to dismiss filed by Henry M. Marks, defendant, on December 28, 1943, this admission being only an admission that such sales are shown on the records, and is not an admission of the validity of these sales, which is expressly denied by plaintiffs for the reasons stated in plaintiffs' petition."

The sales in the motion to dismiss referred to by Marks are, quoting:

"Your defendant, Marks, as owner of the undivided interest in the Pin Hook Plantation herein claimed by the plaintiffs and of the other undivided one-half interest therein, as well, made the following sales of portions thereof:

"To Narcisse Jordan Robinson, lots 2 and 7, by deed dated June 8, 1939, recorded Notarial Book 'AA', Pg. 585, who resold to Henry M. Marks, defendant herein, an undivided one-half interest in the mineral rights therein by deed dated October 3, 1939, recorded Notarial Book 'AA', Pg. 587.

"To Abe Jordan, lot 4, by deed dated October 3, 1939, recorded Notarial Book 'AA', Pg. 584, who resold to Henry M. Marks, defendant herein, an undivided one-half interest in the mineral rights therein by deed dated October 3, 1939, recorded Notarial Book 'AA', Pg. 587.

"To Abe Jordan, Jr., lot 5, by deed dated February 13, 1940, recorded Notarial Book 'BB', Pg. 178, subject to reservation of undivided one-half of mineral rights.

"To Mose Sexton, the 72 acre tract aforesaid, by deed dated July 22, 1939, recorded Notarial Book 'AA', Pg. 553, subject to reservation of undivided one-half of mineral rights.

"To Allan Sholars, undivided 4/23rds royalty interest in lots 1–7, incl., and 72 acre tract, by deed dated June 11, 1943, recorded Notarial Book 'GG', Pg. 9, who, in turn, sold to R. W. Hair by deed dated June 14, 1943, recorded Notarial Book 'GG', Pg. 223.

"Royalty interests have also been sold by the said Narcisse Robinson, Abe Jordan, and Abe Jordan, Jr., covering lots 2, 4, 5 and 7, to Winston L. Stokes, who resold the same to E. R. Whitaker and another, by deeds dated and recorded, respectively, July 8, 1942, in book 'EE', Pg. 564, and August 12, 1942, in Book 'EE', Pg. 584."

We resume the quotation of the stipulations:

(b) "Plaintiffs further admit that no judgment rendered by this Court annulling the title of defendant Henry M. Marks to all or any part of the land in controversy on the grounds stated in Paragraphs 13 to 18 inclusive of plaintiffs' petition would have any effect on the sales and leases listed for the reason plaintiffs admit that all of the sales and leases therein stated, except those made to parties to this suit, were made to buyers who bought in good faith on the face of the record, hence could not be affected by any alleged fraud, even though such fraud is proved."

206

(c) "Plaintiffs further admit that the leases granted by the said Henry M. Marks as stated in Paragraph 19 of plaintiffs' petition are likewise leases to innocent third parties, buying on the face of the record, and consequently could not be affected by any judgment of this court rendered for the plaintiffs on the grounds stated in Paragraphs 13 to 18 inclusive of plaintiffs' petition."

The leases referred to, quoting the whole of Article 19, are as follows:

"Said Henry M. Marks has granted mineral leases on said lands in section 19 to defendant, Carter Oil Company, and has granted minerals lease on said lands in Sections 20 and 29 to W. L. Stokes, who assigned said lease to defendants, Tidewater Associated Oil Co. and Seaboard Oil Co., as shown by the records of said Tensas Parish."

We again resume the quotation of the stipulations:

(d) "Plaintiffs further consent to a dismissal by this court as of non-suit on the claims set forth in plaintiffs' petition in Paragraphs 9, 10, and 11 of the petition, reserving the right of plaintiffs to renew such claims in other proceedings."

(e) "Plaintiffs further enter a non-suit herein as to all of the defendants herein except Henry M. Marks, reserving their right to renew this suit in other proceedings."

To this stipulation "(e)" counsel for the Tidewater and the Seaboard Companies made "formal objection to the attempt on the part of plaintiffs to enter a voluntary non-suit," joined by the Carter Oil Company and also by defendant Marks.

█ The rule on this formal objection is in order. Since there has been no "service of the answer," or even the indication that an answer is in preparation, and since there is no counterclaim, we believe that the plaintiffs may dismiss their action without order of court, or without opponents' consent—the dismissal to be without prejudice. Rule 41(a) (1), Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

There was also a joint admission that all of the vendees in the suit, Henry M. Marks excepted, are residents of the state of Louisiana.

At the conclusion of the hearing the court asked the attorney for the plaintiff this question:

"Is the Court to understand that all of the parties named on page 3 of the motion to dismiss filed by Sholars & Gunby as attorneys for Henry M. Marks (that reference to include the top line on page 4 only, which is descriptive of a deed) are excluded from this case entirely, wholly and completely? In other words, you are now filing the equivalent of a written motion of dismissal as to any and all of those parties unequivocally?"

And the counsel replied:

"No, sir. My answer is no, because the Court has too broadly stated my previous admission."

Additionally, and separately, defendant Marks filed a plea of res adjudicata, and, in support, filed at the hearing on the motions a certified photostatic copy of the entire record in the suit of H. E. Jordan et al. v. H. M. Marks et al., No. 8547 of the Sixth Judicial District Court, Parish of Tensas, State of Louisiana.

This was the situation of the case at the time of the hearing on and the submission of the motions to dismiss on March 10, 1944. Briefs were to be filed by all parties.

But on March 22, 1944, before all briefs were filed, plaintiffs filed an amended complaint. It is important to note the contents of this amended complaint so that determination might be made as to whether or not the position of plaintiffs in the stipulations has remained unchanged.

Article 1 of the amended complaint says:

"Plaintiffs reiterate and make part hereof, all of their original complaint, except as herein amended."

We must note that this language is all-encompassing; the whole of the original complaint is before us "except as herein amended."

Now let us note the amendments.

The first amendment is in the following language:

"Paragraph 9 of the original complaint is amended to read as follows: '9. Sale by the sheriff of Tensas Parish to Fred Skinner on Sept. 10, 1927, of all of the right, title and interest of Abe Jordan, Tom Jordan, and Perry Jordan in and to said property, by acts recorded in Deed Book Y pages 362 and 363.' "

The net result of this amendment is that the substance of Article 9 of the original

complaint is retained; excluded is merely the argumentative part thereof: "said sale conveyed nothing because at that time said Abe Jordan, Tom Jordan and Perry Jordan owned no interest in said property."

But if we go to item (d) of the stipulations hereinabove quoted, you will note that orally in court at the hearing on the motions, all of paragraph 9 of plaintiffs' complaint was supposed to have been dismissed as of nonsuit.

We now note in full the next item on the amended complaint:

"Paragraph 10 of the original complaint is amended to read as follows: '10. Quitclaim by Fred Skinner to Mrs. Bessie Goldman of whatever he acquired in the above sale, by act recorded in Deed Book V page 359, dated May 21, 1928.^'"

This again leaves the substance of Article 10 of the original complaint in full force and effect; the only words eliminated are: "which was nothing," argumentative in character.

Again, if we refer to item (d) of the stipulations afore quoted, we find it was agreed that the whole of Article 10 was out of the complaint.

Coming back to the amended complaint, we find that Article 4 reads as follows:

"Paragraph 11 of the original complaint is amended to read as follows: '11. Tax sale by sheriff of Tensas Parish to L. M. Spencer of a part of said property, for alleged unpaid taxes of 1930 assessed to Mrs. Bessie Goldman, by act dated Oct. 3, 1931, recorded in Deed Book W page 568.' "

Similarly, we find that the crux of Article 11 of the original complaint remains in the record and the following language, which should have been initially excluded because purely argumentative, is deleted:

"Said tax sale is null and void because the description of the property sold is too vague and uncertain to identify any land, and in the alternative, said Mrs. Goldman did not own any of the land purported to be conveyed by said deed, and the land owned by plaintiffs as aforesaid was not assessed to the owner, and no notice of such tax sale was given to the owner thereof, and there was a dual assessment and prior payment of the tax for a part of said land, and the land sold was not the same as the land assessed."

Similarly, and again, if we go to item (d) of the stipulations, it can be seen that plaintiffs had consented to a dismissal as of nonsuit of the claim set forth in paragraph 11 of the complaint.

We now reach the last item, No. 5, of the amended complaint, which reads as follows:

"Plaintiffs attach hereto and make part hereof, judgment of the 6th District Court of Louisiana for Tensas Parish, recognizing plaintiffs as sole heirs of Henry Jordan, and placing them in possession of all of his estate. The value of the Pin Hook Plantation in controversy in this suit exceeds three thousand dollars ($3000)."

This latter amendment is quite proper as a matter of pleading, as it helps to particularize and support Article 3 of the original complaint.

This opinion is being written with the understanding that the amended complaint was permitted to be filed and was allowed by the Court. No objection has been made.

But, finally, what is the prayer in the amended complaint? "* * * Plaintiffs pray as in their original complaint." The original prayer is quoted in the first paragraph of this opinion.

So, we find that Articles 9, 10, and 11 of the original complaint, as to which plaintiffs had consented (item (d) of stipulations) "to a dismissal by this court as of nonsuit" are now reinstituted in writing in the suit by the amended complaint.

First, we shall consider the case as if no amended complaint had been filed— but with all the stipulations included.

The sole ground of jurisdiction is under the provision of the Judicial Code conferring upon the district courts jurisdiction "of all suits of a civil nature * * * where the matter in controversy exceeds * * * $3,000, and * * * is between citizens of different States * * *." 36 Stat. 1091, 28 U.S.C.A. § 41(1). No issue has been made as to whether or not the matter in controversy exceeds $3000, but the issue has been made as to whether or not the suit "is between citizens of different States."

"Federal Courts are of limited jurisdiction, fixed by statute, and the presumption is against jurisdiction throughout the case. Grace v. American Central Ins. Co., 209 U. S. 278, 3 S.Ct. 207, 27 L.Ed. 932; Lehigh Mining & Manufacturing Co. v. Kelly, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444."

Town of Lantana, Fla., v. Hopper, 5 Cir., 102 F.2d 118, 119.

We believe that the theme for consideration is well expressed in the language of Justice Frankfurter in the case of Indianapolis et al. v. Chase National Bank, Trustee, et al., 314 U.S. 63, 69, 62 S.Ct. 15, 16, 86 L.Ed. 47:

"As is true of many problems in the law, the answer is to be found not in legal learning but in the realities of the record. Though variously expressed in the decisions, the governing principles are clear. To sustain diversity jurisdiction there must exist an 'actual', Helm v. Zarecor, 222 U.S. 32, 36, 32 S.Ct. 10, 11, 56 L.Ed. 77, 'substantial', Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U.S. 77, 81, 41 S.Ct. 39, 41, 65 L.Ed. 145, controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute'. [City of] Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title & Trust Co., 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L.Ed. 713. Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interests', [City of] Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title & Trust Co., supra, 197 U.S. at page 181, 25 S.Ct. at page 421, 49 L.Ed. 713, exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit', East Tennessee, etc., Railroad Co. v. Grayson, 119 U.S. 240, 244, 7 S.Ct. 190, 192, 30 L.Ed. 382, and the 'primary and controlling matter in dispute', Merchants' Cotton-Press & Storage Co. v. Insurance Co., 151 U.S. 368, 385, 14 S.Ct. 367, 373, 38 L.Ed. 195. These familiar doctrines governing the alignment of parties for purposes of determining diversity of citizenship have consistently guided the lower federal courts and this Court."

This rule is so accepted that it has been applied also in the case of derivative jurisdiction: See Abraham Land & Mineral Co., Inc., v. Marble Sav. Bank, D.C., 35 F.Supp. 500, at page 502, headnote 8, particularly cases cited thereunder.

We must now decide whether or not there is diversity of citizenship in this suit, as defendant Marks, the Tidewater Associated Oil Company, and the Seaboard Oil Company of Delaware, have raised the question.

Their contention is that (1) Narcisse Jordan Robinson, one of the plaintiffs alleged to be a citizen of Louisiana, as the owner of record of Lots 2 and 7 of Pin Hook Plantation by deed from Henry M. Marks, and also by subsequent deed, the owner of an undivided half of the mineral rights therein, and (2) Abe Jordan, Jr., another party plaintiff, alleged likewise to be a citizen of Louisiana, as record owner of Lot 5 of Pin Hook Plantation by deed from Henry M. Marks, subject to a reservation of an undivided one-half mineral rights interest therein, should be, because of these ownerships with their consequent warranties of title, recast as parties codefendant with Henry M. Marks.

Concurrently, we must give weight to the fact that the other plaintiffs in the suit are demanding a complete divestiture from Marks of any title to this property. These plaintiffs, except two, are citizens of Louisiana. This is the first of the important phases of the question on jurisdiction.

We find Narcisse Robinson and Abe Jordan, Jr., allegedly plaintiffs, to have dealt with the defendant Marks, after the defendant Marks, under an alleged agency, and through his fraudulent acts, had acquired the property which in truth belonged to them. This is proved by the deeds, admittedly with warranty of title, which have been placed in the stipulations aforequoted under (a). More than that, after Marks had sold to Narcisse Jordan Robinson and to Abe Jordan, one of them, Robinson, resold to Marks "an undivided half interest in the mineral rights."

Note the phrase in item (b) of the stipulations: "except those made to parties to this suit". We judge the exception refers to the sales made by Marks to Narcisse Jordan Robinson and to Abe Jordan, both being parties plaintiff. This attempted exception may not prevail in the face of mandatory law; it is unavailing.

These two Jordans are estopped to deny either the title of the one under whom they hold, or the one holding under them.

"It is a principle of universal jurisprudence that 'a vendee who goes into possession cannot dispute the title of his vendor while he remains in possession.' Her-

man on Estoppel, p. 809; Keating v. Wilbert, 119 La. 461, 44 So. 265." Consolidated-Progressive Oil Corp. v. Standard Oil Co., 158 La. 982, 987, 105 So. 36, 37.

" 'Estoppel by warranty is an estoppel based on the principle of giving effect to the manifest intention of the grantor * * * and of preventing the grantor from derogating from or destroying his own grant by any subsequent act.' * * *

"It is a species of estoppel by deed. A party to a deed, and his privies, are estopped from denying the truth of any material fact asserted in it." Lewis v. King, 157 La. 718, 103 So. 19, 22.

"Where a party solemnly admits a fact by deed, he is estopped from not only disputing the deed itself, but also every fact which the deed recites. Karcher v. Karcher, 138 La. 288, 70 So. 228; Reliance Homestead Ass'n v. Brink, 173 La. 331, 137 So. 52." Gaines v. Crichton, 187 La. 345, 174 So. 666, 668.

Narcisse and Abe Jordan are residents and paying the taxes upon the property they acquired from Marks, and, under the law above cited, may not attack the title in fee to the land or the qualified title to half of the mineral rights in the land which Marks acquired from them. At the time they sold to Marks a portion of Pin Hook Plantation, the alleged agreement of agency was already in existence, they had to know of it, and, consequently, they are estopped from claiming from Marks. They acquired from Marks, not only the half interest in the lands which he allegedly was authorized to acquire for them from the Britton & Koontz Bank, but an additional half interest as well, or the full and entire property in fee. They are now estopped to deny that he owned in fee.

Such a legal situation must be confronted with the language of the prayer of the complaint, wherein the plaintiffs are to be recognized "as sole owners and possessors of the land described in paragraph 2 hereinabove, free from all claims of defendants of every nature".

Granting there was fraud as alleged, the other plaintiffs (excluding Narcisse and Abe) are entitled to relief. Then, Narcisse and Abe having bought from the one perpetrating the fraud and having become beneficiaries of the fraud, the court does not see how they may appear as plaintiffs in a suit attacking the very title under which they presently hold and possess by deed from Marks, the perpetrator of the fraud. Legally and logically, they are on the same side with Marks and on the other side from the rest of the plaintiffs. We are constrained to align Narcisse and Abe Jordan as actual defendants.

We believe that Section 37 of the Judicial Code, 28 U.S.C.A. § 80, is applicable, as well as the following jurisprudence, interpretative of the Section: Town of Lantana, Fla., v. Hopper, supra; Edwards v. Glasscock, 5 Cir., 91 F.2d 625, 627; Indianapolis v. Chase National Bank, supra; De Graffenreid v. Yount-Lee Oil Co., 5 Cir., 30 F.2d 574, 575; Lee v. Lehigh Valley Coal Co., 267 U.S. 542, 543, 45 S. Ct. 385, 69 L.Ed. 782, 783.

■ It follows therefore that the motion to dismiss because of want of diversity of citizenship between the plaintiffs on the one hand and the defendants on the other must be sustained.

We should go further, however, for in the case of Williams v. James, D.C., 34 F. Supp. 61, at page 69, we said:

"The opinion of the district court is subject to affirmance or reversal. Such opinion, consequently, is permitted to have a variety of grounds, consistent or inconsistent, concomitant or alternative, to support itself. Final acceptance or rejection of one or more of the grounds is left to the appellate court. The final appellate court declares the one and final ruling, reaching a definiteness of grounds. Accordingly, in this opinion is offered variety of support for the final conclusion. There is that courteous facility, which one sees when the learning apprentice places at hand for the ready use of his master the various materials and tools which might be used at the work."

So, let us say that we are in error in our finding of facts and our conclusions of law above and let us proceed with the second attack made to the jurisdiction because of want of diversity of citizenship.

■ The second angle presented, under the motion to dismiss, to support the plea of want of jurisdiction is that granting the Louisiana citizenship (agreed by stipulation) of Mose Sexton, Mamie Bolden Jordan, widow of Abe Jordan, Allen Sholars, R. W. Hair, Winston L. Stokes and E. R. Whitaker (these being record owners of title to, and of interest in, portions of the property herein at issue, and who hold under Marks or some of the plain-

tiffs) and that, consequently, should these persons be necessary and indispensable defendants, there would be an obvious want of diversity of citizenship. This want of diversity was supposedly disposed of and averted by stipulations (d) and (e), supra. Because of the stipulations, we had considered these parties (1) to be in the same status as if they had filed a motion to dismiss because of being innocent purchasers, subsequent to Marks, on the face of the records, and additionally (2) that Articles 9, 10, and 11 of the original complaint were expunged (item (d) of stipulations), and further (3) at that time the amended complaint was not filed, and, obviously, their motion to dismiss had to be sustained. This was the situation in Angichiodo v. Cerami, D.C., 28 F.Supp. 720, 722, Headnote 4, and it was supposedly accepted to be the situation in this case at the conclusion of the hearing on the motion to dismiss, before the filing of the Amended Complaint.

But we must and shall now rule on the motion with the Amended Complaint in the record.

Let us quote the pivotal and controlling paragraph, No. 8 of plaintiffs' complaint, the paragraph between the descriptive half (who are plaintiffs, what is the property, the fact and manner of inheritance, who are the defendants) of the complaint on the one hand, and the attacking half of the complaint (the listing of the deeds of sale that are to be set aside and annulled—two sets of these (1) Articles 9, 10, and 11, tax-deeds (conveyed nothing) and (2) Articles 13 to 18, inclusive, Bank-to-Marks deed (agency and fraud))—on the other hand:

8. "Defendants are wrongfully and erroneously claiming ownership of or interest in all or a part of said property, and are slandering plaintiffs' title thereto, under the following purported acts of conveyance recorded in said Tensas Parish:"

With Paragraph 8 unmodified, with Paragraphs 9, 10, and 11 reinserted in the complaint by the amended complaint, and plus the unvarying prayer, it follows that item (e)* of the stipulations becomes inescapably revoked. The removal by nonsuit from the case of all parties except Marks then becomes impossible. If the links of title described in Paragraphs 9, 10 and 11 are wrongful and erroneous to show "ownership of or interest in all or part of said propery," any and all parties deriving from and through these deeds are necessary and indispensable parties. The facts then do not permit legal remedy as outlined in Headnote 8, Angichiodo v. Cerami, supra. There are no hidden equities in the deeds atacked by Articles 9, 10 and 11.

When plaintiffs prevail in this suit, they will be (from the prayer) "free from all claims of defendants of every nature." The present owners and possessors (third parties in question) of the property will be without title, and, consequently, absolutely out of ownership.

The case of Ford et al. v. Adkins et al., D.C., 39 F.Supp. 472, though only from a court of first instance, is quoted from liberally because of three reasons: (1) It is a relatively late case (1941); (2) it cites and rehearses fully, comparing the facts, the leading cases of the Supreme Court; and (3) the party whose indispensability as a defendant was at issue was "no longer the owner of any of the property involved" (39 F.Supp. at page 474), while in the instant case the parties are actually and presently the owners:

"In Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 30 S.Ct. 10, 14, 54 L.Ed. 80, the court said: 'If the court can do justice to the parties before it without injuring absent persons, it will do so, and shape its relief in such a manner as to preserve the rights of the persons not before the court. * * * the court may * * * generally shape its decrees so as to do justice to those made parties, without prejudice to such absent persons. (Citing Payne v. Hook, 7 Wall. 425, 19 L.Ed. 260).'

"In Texas Co. v. Wall et al. [7 Cir.], 107 F.2d 45, at 50, the Circuit Court of Appeals for this Circuit said: 'One is not an indispensable party to a suit merely because he has a substantial interest in the subject matter of the litigation, nor is one an indispensable party even though one's interest in the subject matter of the litigation is such that his presence as a party to the suit is required for a complete adjudication in that suit of all questions related to the litigation. The test as suggested in Waterman v. Canal-Louisiana Bank &

---

* (e) "Plaintiffs further enter a non-suit herein as to all of the defendants herein except Henry M. Marks, reserving their right to renew this suit in other proceedings."

Trust Co., supra, may be stated thus: Is the absent person's interest in the subject matter of the litigation such that no decree can be entered in the case which will do justice between the parties actually before the court without injuriously affecting the rights of such absent person?'

" 'Persons having interest in subject-matter of litigation which may conveniently be settled therein are "proper parties," those whose presence is essential to determination of entire controversy are "necessary parties," but, if interests of parties before the court may be finally adjudicated without affecting interests of absent parties, presence of "proper parties" is not indispensable, whereas "indispensable parties" are those having such an interest in subject-matter of controversy that final decree between parties before the court cannot be made without affecting their interests or leaving controversy in such situation that its final determination may be inequitable.' Chicago, M., St. P. & P. R. Co. v. Adams County, 9 Cir., 72 F.2d 816; Mitchell v. Smale, 140 U.S. 406, 409, 11 S.Ct. 819, 840, 35 L.Ed. 442; Wilson v. Oswego Township, 151 U.S. 56, 63, 14 S.Ct. 259, 38 L.Ed. 70; Wirgman v. Persons, 4 Cir., 126 F. 449; Commercial Casualty Ins. Co. v. Lawhead, 4 Cir., 62 F.2d 928, certiorari denied 289 U.S. 731, 53 S.Ct. 527, 77 L.Ed. 1480; Texas Co. v. Wall, 7 Cir., 107 F.2d 45."

In the case of Buss v. Prudential Ins. Co. of America, 8 Cir., 126 F.2d 960, at page 967, we find:

"In Rogers v. Penobscot Mining Co., 8 Cir., 154 F. 606, 610, this court said: 'An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree cannot be rendered between the other parties to the suit without radically and injuriously affecting his interest, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience.' See, also, Bacon v. Rives, 106 U.S. 99, 1 S.Ct. 3, 27 L.Ed. 69; Williams v. Bankhead, 86 U.S. 563, 19 Wall. 563, 22 L.Ed. 184; Egyptian Novaculite Co. v. Stevenson, 8 Cir., 8 F. 2d 576, 580; Silver King Coalition Mines Co. v. Silver King Consol. Mining Co., 8 Cir., 204 F. 166, 169, Ann.Cas.1918B, 571; Sioux City Terminal R. & W. Co. v. Trust Co. of North America, 8 Cir., 82 F. 124, 126; Id., 173 U.S. 99, 19 S.Ct. 341, 43 L. Ed. 628."

The law of Louisiana and the common law on the point are the same.

In the case of State ex rel. Woods v. Register of State Land Office, 189 La. 69, 179 So. 38, at page 41, we quote:

"In the case of Heirs of Burney v. Ludeling, 41 La.Ann. 627, 6 So. 248, 251, the court said:

" 'It is elementary that every party who may be affected by a decree must be made a party to a suit, because no one should be condemned without a hearing.' "

See, also, Succession of Todd, 165 La. 453, 115 So. 653; Amrheim v. Champion, 9 Orleans App. 246. Cf. Davidson v. Frost-Johnson Lumber Co. et al., 126 La. 542, 52 So. 759, to show that the two law systems are in agreement.

Obviously, since the third parties are admittedly citizens of Louisiana, the suit is not one as between citizens of different states, because all the plaintiffs except two are citizens of Louisiana.

So, additionally and cumulatively, the motion to dismiss based upon want of diversity of citizenship must again be sustained.

Judgment sustaining the motion to dismiss for want of jurisdiction will be signed when presented.